IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT WAYNE LUSTER,              )
  #162 936,                        )
        Plaintiff,                 )
                                   )
  v.                               ) CIVIL ACTION NO.: 2:09-CV-832-TMH
                                   )                [WO]
KENNETH JONES, WARDEN, *et al.*,   )
                                   )
  Defendants.                      )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Plaintiff, an inmate currently incarcerated at the

Holman Correctional Facility, challenges the constitutionality of actions taken against him

on June 29, 2009 and July 7, 2009 while he was  incarcerated at the Bullock Correctional

Facility in Union Springs, Alabama.  Plaintiff names as defendants to this cause of action

Kenneth Jones, Warden of Bullock Correctional Facility ["Bullock"], Sandra Giles,

Assistant Warden at Bullock, Captain Sylvester Nettles, Captain Henry Perkins, Sergeant

A. Griffin, Sergeant A. Jackson, and Correctional Officers William Terry, J.F. Johnson, T.

Benton, C. Bennett, and Rodney Barber.   Plaintiff asserts claims of  excessive force and

failure to protect against Defendants for which he seeks monetary damages. He also seeks

implementation of new department-wide rules, regulations, policies, and procedures which

would allow inmates subjected to physical or mental abuse while incarcerated to present

their complaints to an independent source for investigation.  (*Doc. No. 1 and Exhibits*.)

Defendants filed a special report and relevant supporting evidentiary materials addressing Plaintiff' claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe this report as a motion for summary judgment.  Thus, this case is now pending on Defendants' motion for summary judgment.  Upon consideration of the motion, the evidentiary materials filed in support thereof and Plaintiff's response to the report/motion, the court concludes that the motion for summary judgment filed by Defendants Jones, Giles, Nettles, Perkins, Hampton, Jackson, Johnson, Benton, and Bennett is due to be granted and the motion for summary judgment filed by Defendants Terry, Barber, and Griffin is due to be granted in part and denied in part.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

When the moving parties meet their evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision ©, changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v.*

*Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of*

*the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts,

a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his July 7, 2009 excessive force claim against Defendants Terry and Barber and his failure to protect claim against Defendant Griffin. The remaining defendants, however, are entitled to summary judgment on each of the claims lodged against them by Plaintiff.

## II. DISCUSSION

### A. *Absolute Immunity*

With respect to the alleged constitutional violations Plaintiff lodges against Defendants in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114,

1125, 134 L.Ed.2d 252 (1996).   Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.   Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing,  Defendants sued in their official capacities are entitled to sovereign immunity under the Eleventh Amendment for the claims seeking monetary damages from them  for alleged violations of Plaintiff' constitutional rights.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).


## B.  Injunctive Relief

Plaintiff is no longer incarcerated at the Bullock Correctional Facility.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979);  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  Where, as here, the case involves a request for prospective injunctive relief, the mere fact that Defendants may have harmed Plaintiff in the past is not enough to establish a live controversy, absent continuing adverse effects. *See Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied

by any continuing present injury or real and immediate threat of repeated injury);  *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 16 (1st Cir. 2004).   It is not sufficient for  Plaintiff to claim that he  "'could be subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant - the prospect of harm must have an 'immediacy and reality.'" *Id.* (quoting *Golden v. Zwickler,* 394 U.S. 103, 109 (1969)).

"Equitable relief is a prospective remedy, intended to prevent future injuries." *Adler v. Duval County School Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).  For that reason, "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id.; Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir. 1994) ("Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.' " (citation omitted)); *Khalil v. Laird,* 353 F. App'x 620, 621 (2nd Cir. 2009) (injunctive and declaratory relief moot because inmate released from prison);  *Spears v. Thigpen,* 846 F.2d 1327, 1328 (11th Cir. 1989) ("[A]n inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred."); *Wahl  v. McIver,* 773 F .2d 1169, 1173 (11th  Cir. 1985) ("[A] n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred."). Further, Plaintiff's is not the type of claim to which an exception to the mootness doctrine applies, as there is no reasonable expectation that he will be subjected to the complained of  conduct again. *See Murphy v. Hunt,* 455 U.S. 478, 482

(1982) (recognizing exception to the mootness  doctrine where there is a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotation marks and citation omitted).  *See also City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.") Accordingly, because Plaintiff has been transferred from the Bullock Correctional Facility, his claims for equitable relief are due to be dismissed as moot.[2]

## C.  Individual Capacity Claims[3]

### i.  Excessive Force - June 29, 2009

The morning of June 29, 2009 Defendant Terry was the assigned rover for dorms

---

[2] Even if Plaintiff could establish a likelihood of success on the merits or the possibility of irreparable injury as required for any injunctive relief and to the extent his claims for injunctive relief are not moot, the PLRA extends prospective relief  "no further than necessary to correct the violation of the Federal right of a particular plaintiff." 18 U.S.C. § 3626(a)(1)(A).  A district court faced with a suit about prison conditions may not grant or approve prospective relief "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* Here,  the relief Plaintiff seeks—implementation of new  policies and procedures allowing inmates to report guard misconduct to sources outside the prison facility  - is not "narrowly drawn."  *Easter v. CDC,* 694 F. Supp.2d 1177, 1188–90 (S.D.Cal. 2010) ("Court does not have jurisdiction to issue wide-reaching injunctions to remedy inadequacies in prison administration that extend beyond any actual injury suffered by a plaintiff.").

[3] At this stage of the proceedings, the court takes as true the facts  alleged in the complaint  and construes them in the light most favorable to Plaintiff. *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008).

I1 and I2.  He made an initial pass through  dorm I2,  Plaintiff's assigned dorm, and

announced a wake-up call. Minutes later the guard returned to the  dorm. He approached

Plaintiff's bed and slapped his leg several times.  Plaintiff informed Defendant Terry that

he only needed to tap Plaintiff's bunk and he would get up. Questioning whether Plaintiff

thought he was a "bad ass," Defendant Terry then removed his baton with one hand and

grabbed Plaintiff's leg with the other while screaming at Plaintiff to get up. Plaintiff did

not fight against the officer but states he clung to the bed to keep from falling off his bunk

which was five feet off the floor. Defendant Terry refused Plaintiff's pleas that he release

his leg and, unable to maintain his grip on the bunk, Plaintiff states Defendant Terry

violently drug him from his bed causing him to fall five feet to the concrete floor.

Defendant Hampton ordered Plaintiff to get dressed and then escorted him to the shift

commander's office. Officer Hampton told Defendant Terry to issue a disciplinary to

Plaintiff for creating a security hazard. Defendant Terry, however,  asserted that he would

be writing up Plaintiff for kicking him. Subsequently, Defendant Hampton directed

Plaintiff to obtain a body chart from the infirmary and he did so.  At the disciplinary

hearing held July 13, 2009, the hearing officer found Plaintiff guilty of the charged

conduct, *i.e.*, disorderly conduct, based on Defendant Terry's testimony that Plaintiff

kicked him while he was trying to wake up Plaintiff for yard call. (*Doc. No. 1; see also*

*Doc. No. 10, Exh. A-C.*)

      Claims of excessive force by prison officials against convicted inmates are governed

by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11ᵗʰ Cir. 1999).   The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id*. (internal quotations omitted).  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Id*.  However, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."  *Id*. at 4.  "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Wilkins v. Gaddy*, 559 U.S. ____, 130 S.Ct.1175, 1178-1179 (2010).

Plaintiff complains that on June 29, 2009 Defendant Terry used excessive force against him and did so maliciously and sadistically in order to cause harm.[4]  (*Doc. No. 1 at pg. 15*.)  Defendant Terry denies the allegations made against him.  Specifically, Defendant Terry states that as he attempted to wake Plaintiff he accidentally touched the inmate's foot

---

[4]Although Plaintiff asserts that Defendant Terry's conduct also violated his rights under the Fourteenth Amendment, he does provide any facts in support of this allegation and the court finds his claim against Officer Terry is appropriately considered under the Eighth Amendment. *See Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989) (citing *Whitley v. Albers,* 475 U.S., 312, 327 (1986)) ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment."); *Whitley,* 475 U.S. at 327 ("[T]he Eighth Amendment ... serves as the primary source of substantive protection to convicted prisoners ... where the deliberate use of force is challenged as excessive and unjustified[ ]")

whereupon Plaintiff arose and began "bicycle kicking" and cursing.  Defendant Terry's efforts to bring Plaintiff under control were futile so he jerked Plaintiff's foot a number of times. Plaintiff responded to the guard's actions  by stating "you don't have to touch me Goddamn it."   He then jumped from his bunk after kicking his foot free from Defendant Terry's grasp.  (*Doc. No. 10, Exhs. A, M.*)

Shortly after the incident occurred, Plaintiff was examined at the health care unit. He advised medical personnel that "DOC" snatched him  from the top bunk to the floor by his foot for no reason. Plaintiff informed the examining nurse  that "I'm not hurt."  Medical personnel found Plaintiff had  no signs of distress, no bruises, and no redness. He was returned to DOC custody. (*Doc. No. 10, Exh. A.*)

As noted, the predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. *Wilkins,* 130 S.Ct. at 1179.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996).   From

> consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033). Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance.... *Harris v. Chanclor*, 537 F.2d 203, 206 (5th Cir. 1976) ("a supervisory officer is liable under [Section] 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence").

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002) (footnote omitted); *Campbell*, 169 F.3d 1374 ("To establish an Eighth Amendment claim for excessive force, ... Plaintiff must meet [a heightened] intent requirement ... [and] must prove that 'force was applied ... maliciously and sadistically for the very purpose of causing harm.' *Whitley*, 475 U.S. at 320-21, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973).... [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary."). Another relevant factor in ascertaining whether correctional officers used force "maliciously and sadistically" is the extent of the injury suffered by the inmate. *Campbell*, 169 F.3d at 1375. Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 130 S.Ct. 1175. While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. *Id.* at 1178. Instead, the extent of injury

suffered is just one factor to account for in the analysis, "but does not end it." *See Hudson,* 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. *Wilkins,* 130 S.Ct. at 1178. A *de minimis* use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*

Here, Plaintiff's allegations do not support a claim of excessive force. The undisputed facts reflect that Plaintiff was still lying on his bed when Defendant Terry entered Dorm 12 for a second time in attempt to mobilize inmates for yard call.  Although Plaintiff points to inconsistencies in Defendants' statements regarding whether Defendant Hampton told him to get off his bed or whether Defendant Terry removed him from his bed, he does not dispute Defendants' statements that he kicked at Defendant Terry after the officer made contact with his leg for purposes of getting him up and out of his bed. Further, Plaintiff does not allege that he suffered any injuries as a result of Defendant Terry's actions and the medical records show that he disclaimed being hurt in any manner as a result of the incident about which he complains. (*Doc. No. 24*.)

After thorough review of the facts and viewing such in a light most favorable to Plaintiff, the court concludes that Plaintiff fails to establish the use of excessive force as

the record fails to reflect  that Defendant Terry used force "maliciously and sadistically" for the very purpose of causing harm. In addition, the fact that Defendant Terry requested assistance and immediately reported the incident to Defendant Hampton who then ensured Plaintiff received a medical examination  within minutes of the specific encounter is another reason which supports the finding of a lack of malicious or sadistic conduct. Moreover, Plaintiff needed only the most cursory treatment from correctional medical personnel as he indicated he had no injuries.   In sum, the physical contact about which Plaintiff complains was at most a "*de minimis* use[] of physical force" which is excluded from "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments" as the contact complained of in this instance "is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10;    *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), *cited with approval in Hudson*, 503 U.S. at 9 ("Not every push or shove, even if it may later seem unnecessary . . ., violates a prisoner's constitutional rights."); *Anderson v. Sullivan*, 702 F. Supp. 424 (S.D.N.Y. 1988) (officer who pushed prisoner into a bar and put his hands behind his back to apply handcuffs did not administer excessive force).  The court, therefore, concludes that Defendant Terry is entitled to summary judgment on this claim of excessive force.

### ii. Excessive Force - July 7, 2009

Prison officials conducted a search of Plaintiff's dormitory the morning of July 7,

2009. The ADOC's K9 unit assisted in the search. Shortly after this initial search, the ADOC's Crisis Emergency Response Team ["CERT"] entered Plaintiff's dormitory. Plaintiff states that members of the CERT team ordered inmates to get on their beds, lay face down, and place their hands behind their heads.  Plaintiff complied.  Defendant Terry approached Plaintiff's bed and yelled "This is him. This is him right here." Defendant Terry then grabbed Plaintiff by his shirt collar and pant leg and dragged him from his bunk causing him to fall five feet to the floor below.  Defendant Terry stood over Plaintiff yelling "Now what?"  Plaintiff turned his head slightly from his face down position at which time Defendant Barber kicked him on the left side of his face.  Another officer stomped Plaintiff's lower back.  A guard then snatched Plaintiff to his feet at which time Defendant Terry punched him in the face. Plaintiff then observed Defendant Nettles, who was outside the grill gate and had a clear an unobstructed view of Plaintiff, turn and exit the dormitory. Plaintiff states that an unknown officer then ordered him to turn and face the wall, put his hands on the wall, and spread his legs apart.  He did as he was told. Defendant Terry then hit Plaintiff in the ribs, laughed, and said "I'm getting one more." Defendant Griffin told Defendant Terry not to hit Plaintiff anymore at which time the guard brushed his fist against Plaintiff's chin and said "I ought to hit you right here and knock your ass out."  He further informed Plaintiff that "if you ever open your mouth again I'll have them kill you."  Defendant Terry ordered Plaintiff to stand against the wall and told him he was going to segregation.  (*Doc. No. 1; see also Exhibits E-G.*)

-17-

After Defendant Terry and the other officers left the dormitory, Defendant Benton ordered all the inmates to remain on their beds, face down, with their hands behind their heads. Plaintiff states he remained in fear standing against the wall. Approximately ten to fifteen minutes later, Defendant Barber returned to Plaintiff's dormitory and ordered all the inmates to get on their beds. Defendant Barber approached Plaintiff's bed and said something he couldn't understand.  As Plaintiff slightly turned his head Defendant Barber slapped his head and screamed at him to put his face down and his hands behind his head. (*Doc. No. 1*)

Later that same morning Defendant Johnson escorted Plaintiff to an administration area where Defendants Giles and Perkins questioned him about the events in the dormitory. After his meeting with Defendants Giles and Perkins, Defendant Johnson escorted Plaintiff to the health care unit.   Medical personnel examined Plaintiff and ordered x-rays. Subsequently, Defendant Jackson escorted Plaintiff to the shift commander's office where he provided a written statement concerning the events which occurred earlier in the day. (*Doc. No. 1*.)

According to Defendants, Warden Jones received notification of the July 7, 2009 use of force incident from a source outside the institution as Plaintiff did not personally report the matter to prison officials. [5] After Warden Jones advised  Defendants Perkins and

---

[5]Plaintiff states in his complaint that he feared further assaults and had called a friend informing him/her that he had been badly beaten and needed medical attention.  Plaintiff asked his friend to call the commissioner's office to request that someone from outside the institution check on his condition. (*Doc.*

Giles of Plaintiff's claims, they summoned Plaintiff to the administration office to question

him about his allegations. Plaintiff informed Defendants Perkins and Giles that Defendant

Terry assaulted him when CERT team members went through the dorm. He showed the

officials the areas on his body where he had been hit or kicked which had visible marks.

(*Doc. No. 10, Exhs. A, E.*)

Prison officials escorted Plaintiff to the infirmary at 1:45 p.m. on July 7, 2009. He

informed medical personnel that he had been pulled from his top bunk while he was asleep,

kicked in the side and face, punched in the stomach, and had his back stepped on. Medical

personnel observed visible injuries to Plaintiff's face including his eye, cheek, and mouth,

noted an area of pain to his back on the right side, and observed visible marks to Plaintiff's

right and left side around his rib area. Medical staff ordered x-rays for Plaintiff's back.

(*Doc. No. 10, Exh. A.*)

Defendant Perkins questioned three CERT team members as well as Defendant

Terry with regard to Plaintiff's allegations. Defendant Perkins requested that the three

CERT officers and Defendant Terry provide written statements in response to Plaintiff's

allegations. In his statement provided for the institutional incident report, Defendant Terry

indicated that he, along with other correctional officers, informed the CERT team that

certain inmates in the dorms were constant problems and he identified Plaintiff as one such

inmate. As the dorm search continued, Defendant Terry "tapped" Plaintiff on the back and

---

*No. 1.*)

told him to lie on the floor with his hands behind his head as his property was searched. During the search, Plaintiff asked that his property not be destroyed or thrown around and at one point moved as though to retrieve something saying it was sentimental at which time Defendant Terry jumped up, pushed Plaintiff in the chest causing his back to hit the front of the bed. Plaintiff was ordered not to move and was disciplined by other CERT team members who "tapped" him on the head.  Defendant Terry states that Plaintiff was then placed against a wall with his hands behind his head. While the shakedown continued, Plaintiff moved away from the wall to say something again at which time Defendant Terry pushed him in the side and placed him back on the wall. Several CERT team members also once again stepped in, grabbed Plaintiff's shoulder and "tapped" the back of his head. After Defendant Terry finished shaking down Plaintiff's personal property, he pat searched Plaintiff. He denied Plaintiff's allegation that he kicked him during the pat down and denied seeing anyone else kick Plaintiff but further indicated in his statement that "inmate Luster was disciplined in a fashion as listed earlier [in his statement], which is normal procedure for C.E.R.T. team."  (*Doc. No. 10, Exh. A at 20*.)

In his affidavit submitted in response to Plaintiff's complaint, Defendant Terry states that he was inventorying the contents of Plaintiff's personal box when Plaintiff made a movement off the wall. Defendant Terry pushed Plaintiff in the side for failing to stay on the wall. He denies slamming Plaintiff to the floor, kicking him, punching him, or stomping him. (*Doc. No. 10, Exh. M*.)

In his statement provided for Captain Perkins' institutional incident report, Defendant Griffin indicated that he walked over to Plaintiff's bed when the inmate was being reprimanded by Defendant Terry and CERT member Michael Holland. At the time, Plaintiff was lying face down on the floor by his bed. Defendant Griffin stated that he did not take part in nor see anyone hit or strike Plaintiff but stated he told Defendant Terry "not to hit inmate Luster to make him get back on his assigned bed." (*Doc. No. 10, Exh. A at 21, Exh. F.*)

Defendant Barber was part of the CERT team that shook down Plaintiff's dorm. In his statement provided for the institutional  incident report, he denied making any direct contact with Plaintiff and claimed no knowledge of any assault on Plaintiff during the July 7, 2009 shakedown. He reiterates these contentions in his affidavit. (*Doc. No. 10, Exh. A at 23, Exh. K.*)

The degree and extent of Plaintiff's injuries is not entirely clear from body chart submitted by Defendants. The body chart does, however, reflect that medical personnel observed and documented Plaintiff's reports of  pain and/or injury to his face, back, and ribs. Nonetheless, as explained, the *de minimis* nature of an inmate's injuries is not dispositive of an excessive force claim. *Wilkins*, 130 S.Ct. at 1177 (Dismissal of "a prisoner's excessive force claim based entirely on ... [a] determination that his injuries were '*de minimis*' [is improper] ... [as it] is at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury...."). The

nature of the injuries suffered by Plaintiff will, however, remain relevant to whether Defendants Terry and Barber actually used force as described by Plaintiff and whether they acted "'maliciously and sadistically'...." *Id.* at 1180.

Defendants Terry and Barber argue they are entitled to qualified immunity on Plaintiff's excessive force claim lodged against them in their individual capacities. The law of this Circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich*, 280 F.3d at 1301, citing *Hudson*, 503 U.S. 1, and *Whitley v. Albers*, 475 U.S. 312 (1986); *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008) ("'[T]here is no room for qualified immunity' in Eighth Amendment ... excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)."). Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Skrtich*, 280 F.3d at 1302; *see also Hudson,* 503 U.S. at 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether Plaintiff's allegations that Defendants Terry and Barber maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment,

sets forth a violation of his Eighth Amendment rights.

Plaintiff alleges that Defendant Terry came to his dormitory on July 7 with the intent to administer a retaliatory beating as punishment for Plaintiff reporting the June 29, 2009 incident. Plaintiff maintains this is obvious because Defendant Terry approached another inmate's bed and questioned him about the location of Plaintiff's bed. Defendant Terry then saw Plaintiff on his bed and immediately grabbed him and dragged him onto the floor below his bunk. Defendant Barber then kicked Plaintiff in his face and side.  Without any provocation, Plaintiff claims that Defendants Barber, Terry, and several unknown officers continued beating him. Plaintiff further asserts that Defendant Perkins' supposition in the incident report that Plaintiff's injuries were self-inflicted or invited due to the time lapse between when the event occurred and when it came to prison officials' intention is "absurd and []not supported by any evidence." (*Doc. No. 24*.)  Defendant Terry denies Plaintiff' allegations regarding the use of force and maintains at no time did he slam, kick, punch, or stomp Plaintiff but merely pushed him in the side for failing to stand against the wall. Defendant Barber denies making any direct contact with Plaintiff and disclaims any knowledge of Plaintiff being assaulted at any time by a correctional officer or a CERT member. (*Doc. No. 10, Exhs. K, M*.)

Viewing the facts in the light most favorable to Plaintiff, as is required at this stage of the proceedings, the court concludes Defendants Terry and Barber are not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive these defendants'

motion for summary judgment regarding the excessive force claim lodged against them. *Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the use of force and whether Defendants Terry and Barber acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment with respect to the July 7, 2009 excessive force claim presented against Defendants Terry and Barber in their individual capacities is due to be denied.

### D.  Failure to Protect

Plaintiff alleges in his complaint that Defendants Nettles, Griffin, and Benton failed to protect him from the assault by Defendant Terry. According to the complaint, Defendant Nettles was standing outside the grill gate inside Plaintiff's dormitory during the July 7, 2009 shakedown. Plaintiff contends this officer had a direct and unobstructed view of the dormitory but turned and exited the dormitory rather than "rendering aid" from Defendant Terry's "illegal conduct." (*Doc. No. 1*.) Plaintiff claims that Defendant Griffin was standing beside him when Defendant Terry slammed his fist into Plaintiff's ribs. While Plaintiff states that Defendant Griffin told Defendant Terry not to hit him anymore, he asserts in his opposition that Defendant Griffin stood by while Defendants Terry, Barber, and other unknown correctional officers beat him. (*Doc. Nos. 1,  24*.)

Defendants argue that they are protected by qualified immunity. As noted, however, a defense of qualified immunity is generally unavailable in cases involving excessive force

-24-

because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich*, 280 F.3d at 1301 (11th Cir. 2002). A defendant is not entitled to qualified immunity when a plaintiff properly pleads excessive force resulting from a failure to protect by the defendants. As discussed, *infra*, Plaintiff has properly pled his claim for relief. Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider the sufficiency of Plaintiff's allegations that Defendants Nettles, Griffin, and Benton failed to protect him from the use of excessive physical force.

Jail officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(*en banc*), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware
> of the substantial risk of serious harm in order to have had a '"sufficiently
> culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80;
> *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271
> (1991).... Even assuming the existence of a serious risk of harm and causation,
> the prison official must be aware of specific facts from which an inference
> could be drawn that a substantial risk of serious harm exists--and the prison
> official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct.
> at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Here, Plaintiff asserts that Defendants Griffin, Benton, and Nettles acted with deliberate indifference by failing to protect him from Defendant Terry's and Barber's use of excessive physical force. Defendant Nettles denies any knowledge of Plaintiff's excessive force allegation and states that his presence in the grill gate during the CERT team's presence in the dorm does not equate to his having actually observed the actions about which Plaintiff complains. Defendant Benton states he was a Dorm Rover on July 7, 2009 for Dorms E1-E2 and I1-I2. During the incident in question he observed CERT teams members telling inmates in E1 dorm to lay on their stomach on their beds with their hands behind their head and he proceeded to Dorm I1-I2 to give the same instructions. He denies having knowledge of inmates being hit or slapped. Defendant Griffin states that during the incident in question he walked over to the area where Defendant Terry and a CERT officer were reprimanding Plaintiff but denies seeing anyone hit or strike him at any time. (*Doc. No. 10, Exhs. D, F, H.*)

The court finds Plaintiff's contention that Defendant Nettles had an unobstructed view

-26-

of the dormitory and that both he and Defendant Benton were present inside the dormitory during the July 7 incident is insufficient to demonstrate that they had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that they actually drew this inference, and thereafter, ignored this risk. These Defendants' mere presence in Plaintiff's dormitory during the incident in question and the mere fact that there was a possibility that they could have observed Plaintiff being assaulted by Defendants Terry and Barber, without more, is insufficient.   Plaintiff has, therefore, failed to establish that Defendants Nettles and Benton acted with deliberate indifference to his safety by failing to protect him from an assault by Defendants Terry and Barber. Accordingly, Defendants Nettles' and Benton's motion for summary judgment with respect to Plaintiff's failure to protect claim is due be granted.

Based on the previous discussion regarding Defendant Terry's and Barber's alleged use of excessive physical force, the facts, when viewed in the light most favorable to Plaintiff establish that Defendant Griffin, however, had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that Defendant Griffin actually drew this inference, and thereafter, ignored this risk.  The allegations in Plaintiff's complaint, which the court must take as true at this juncture, indicate that Defendant Griffin was present during Defendants Terry's and Barber's assault on Plaintiff and that the assault continued for a period of time before Defendant Griffin eventually told Defendant Terry not to hit Plaintiff anymore. The court, therefore, concludes that Defendant

Griffin is not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive a motion for summary judgment.  Consequently, the motion for summary judgment relative to the alleged deliberate indifference to Plaintiff's safety by Defendant Griffin is due to be denied.

### E.  Due Process

Plaintiff contends that, with respect to the allegations in the complaint in regard to *both* the June 29, 2009 and July 7, 2009 incidents, Defendants Jones, Giles, Nettles, Perkins, Hampton, Johnson, Bennett, Griffin, Jackson, and Benton violated his Fourteenth Amendment rights by failing to adequately investigate, report, and/or perform  duties required under Alabama law and Alabama Department of Corrections' ["ADOC"] rules, regulations, and policies regarding inmate assaults and mistreatment and which would have protected him from future illegal treatment by his custodians.  (*Doc. No. 1 at pgs. 14-15, 16.*) The court understands Plaintiff to complain that the defendants identified above failed to adequately investigate the June 29, 2009 and July 7, 2009  incidents and that such failure led to the assaults complained of in this action.

"It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *See Oklahoma City v. Tuttle,* 471 U.S. 808, 816  (1985).  Here, Plaintiff's conclusory allegations that the defendants identified above violated his due process rights by failing to adequately

investigate the incidents in question  fails to implicate any constitutional right to which he

is entitled. The failure to properly investigate an inmate's complaint does not rise to the level

of a separate constitutional violation. Inmates simply do not enjoy a constitutional right to

an investigation of any kind by government officials.  *See DeShaney v. Winnebago County*

*Dept. of Social Services,* 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally

confer no affirmative right to governmental aid, even where such aid may be necessary to

secure life, liberty, or property interests of which the government itself may not deprive the

individual."*).*

      Based on the foregoing, the court concludes that the conduct about which Plaintiff

complains does not rise to the level of a constitutional violation. Defendants Jones, Giles,

Nettles, Perkins, Hampton, Johnson,  Bennett, Perkins, Jackson, and Benton  are, therefore,

entitled to summary judgment on Plaintiff's due process claim as it relates to both the June

29, 2009 and July 7, 2009  incidents.

### F. Respondeat Superior

      In his opposition, Plaintiff contends that Defendants Jones, Giles, Nettles, Perkins,

Hampton, Griffin, and Jackson are liable for the acts complained of under the theory of

*respondeat superior*.  Specifically, Plaintiff alleges that had these defendants taken

appropriate corrective action for the past misconduct of their officers/subordinates, it is

unlikely the two incidents complained of would have occurred.   Plaintiff maintains these

defendants have a custom and policy of failing to adequately investigate and report instances of inmate abuse by correctional officers.  (*Doc. No. 24*.)

The law is well settled that defendants "can have no *respondeat superior* [or vicarious] liability for a section 1983 claim." *Marsh v. Butler County,* 268 F.3d 1014, 1035 (11th Cir. 2001); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), (*citing Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.).  Thus, Defendants  Jones, Giles, Nettles, Perkins, Hampton, Griffin, and Jackson are liable for the challenged force used by Defendant Terry and Barber only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation[s]." *Cottone*, 326 F.3d at 1360 (citation omitted).

It is undisputed that  Defendants  Jones, Giles, Nettles, Perkins, Hampton, Griffin,

and Jackson did not participate in the use of force about which Plaintiff complains.  Nor does Plaintiff allege that Defendants Jones, Giles, Nettles, Perkins, Hampton, Griffin, and Jackson had prior knowledge that Defendants Terry and Barber would assault him.  Rather, Plaintiff makes the general allegation that these Defendants were aware of a pattern of inmate abuse at the prison and failed to take measures to prevent such abuses.   Plaintiff, however, has failed to present any colorable evidence of such a pattern or of any knowledge of such a pattern by these Defendants.  Plaintiff's general allegation that a pattern of inmate abuse exists is insufficient to bring his claims within the ambit of the type of preexisting, substantial risk of harm situations sufficient to put an official on notice of the need to alleviate the condition. *See Marsh*, 268 F.3d 1014. A mere failure to anticipate is insufficient to tie Defendants to the assault against Plaintiff.

Plaintiff has presented no probative evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Defendants Jones, Giles, Nettles, Perkins, Hampton, Griffin, and/or Jackson failed to take corrective action.   In addition, there is no evidence before the court tending to show that the actions about which Plaintiff complains occurred pursuant to any policy or procedure enacted by the supervisory defendants or by Defendants Terry's and Barber's fellow correctional officers nor due to a lack of supervision or training.  In light of the foregoing, Defendants Jones, Giles, Nettles, Perkins, Hampton, Griffin, and Jackson are due to be granted summary judgment on this claim.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Defendants' motion for summary judgment (*Doc. No. 10*) with respect to Plaintiff's constitutional claims for monetary damages lodged against them in their official capacities be GRANTED as Defendants are entitled to absolute immunity from these claims.

2.  The motion for summary judgment (*Doc. No. 10*) filed on behalf of Defendants Jones, Giles, Nettles, Perkins, Hampton, Jackson, Johnson, Benton, and Bennett regarding Plaintiff's claims against these defendants in the remaining aspects of their official capacities and in all aspects of their individual capacities be GRANTED.

3.  The motion for summary judgment filed on behalf of Defendants Terry and Barber (*Doc. No. 10*) with respect to all claims contained in the complaint, with the exception of the excessive force claim described in the following paragraph, be GRANTED.

4.  The motion for summary judgment (*Doc. No. 10*)  filed on behalf of Defendants Terry and Barber with regard to the July 7, 2009 excessive force claim lodged against these Defendants in their individual capacities be DENIED.

5.  The motion for summary judgment filed on behalf of Defendant Griffin (*Doc. No. 10*) with respect to all claims contained in the complaint, with the exception of the July 7, 2009  failure to protect claim as described in the following paragraph, be GRANTED.

6. The motion for summary judgment filed on behalf of Defendant Griffin (*Doc. No. 10*) with regard to the July 7, 2009 failure to protect claim lodged against this Defendant in his individual capacity be DENIED.

7. This case be set for a set for an evidentiary on Plaintiff's July 7, 2009 excessive force claim against Defendants Terry and Barber and on Plaintiff's July 7, 2009 failure to protect claim against Defendant Griffin.

It is further

ORDERED that on or before **May 18, 2012** the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down

prior to the close of business on September 30, 1981.

Done,  this 30th day of April  2012.


/s/Terry F. Moorer_____
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE