IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT WAYNE LUSTER, | ) | |
| #162 936, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CIVIL ACTION NO.: 2:09-CV-832-TMH |
| | ) | [WO] |
| KENNETH JONES, WARDEN, *et al*., | ) | |
| | ) | |
|     Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Robert Wayne Luster ("Luster") claims that Correctional Officers William Terry ("Officer Terry" ) and Rodney Barber ("Officer Barber") used excessive force against him in violation of his constitutional rights.  In addition, Luster asserts that Correctional Officer Griffin ("Officer Griffin") acted with deliberate indifference to his safety by failing to protect him from the assault by Officers Terry and Barber.  On September 27, 2012, this court held an evidentiary hearing in this case. Based on the evidence presented, the court concludes that judgment should be entered in favor of the defendants.

## II.  DISCUSSION

### A.     The Findings of Fact and Credibility Determination

On the morning of July 7, 2009, prison officials conducted a routine shakedown of the dormitories in Bullock Correctional Facility.  Around 8:00 a.m., the Alabama Department

of Corrections' Crisis Emergency Response Team ("CERT") and several other correctional officers entered Luster's dormitory to conduct a search.  Luster was resting on the top bunk of a bed to which he was not assigned.  Officer Perkins approached Luster's bed and commanded the inmates in the area to lie flat on their beds with their hands behind their heads and their legs crossed.  When the officers noticed that Luster's assigned bed was empty, they looked around the area for him.  Officer Perkins recognized Luster in the top bunk and said, "There he is right there."

The CERT members ordered all of the inmates to get off their beds and onto the floor. While Luster was on the bed, Officer Perkins tapped him on the back.  Luster did not move. After Officer Perkins tugged on Luster's pants, Luster jumped off the bed.  Officer Terry or another officer ordered Luster to stand against the wall with his hands behind his back while he conducted a search of Luster's personal belongings.   When Officer Terry found sentimental items in Luster's box, Luster turned and reached for his belongings.  With an open hand, Officer Terry pushed Luster in the stomach.  Luster's shoulder bumped into the front of the bunk bed.  At some point, Luster was placed on the ground. Officer Barber or another officer cautioned Luster not to move again.  Shortly thereafter, the assistant CERT team leader, Officer Griffin, approached the area.  While Luster lay on the ground with his hands behind his back, Officer Terry stood by Luster's head and Officer Holland stood next to the bunk bed.   Officer Griffin cautioned Officer Terry not to hit inmate Luster.

Luster's version of the facts is markedly different.  Luster maintains that he complied with the officers' orders.  Luster testified that Officer Terry grabbed the back of his collar

and the edge of his pants, slammed him onto the floor, and kicked him.  Officer Terry then pulled Luster off the ground and punched him in the jaw and chin.  After Officer Barber told him to stand against the wall, Officer Terry ordered Luster to call him and the other officers "Daddy" and threatened that "[i]f [he] ever opened his mouth again he would have them kill [him]."  After the search, the officers ordered the inmates to return to their beds with their heads face down on their pillows.  Luster also testified that, while he was lying on his bed, Officer Barber returned and slapped the back of his head onto the pillow.

Given the conflicting testimony, it is necessary for the court to make findings of credibility and fact.  The court must weigh the testimony of the witnesses in light of all the facts, taking into account their interests, the consistencies and inconsistencies in their testimonies, and their demeanor on the stand.  *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999).  Luster's demeanor, coupled with his obvious interest in the outcome of this case, militates strongly against his veracity.  For example, when cross-examining witnesses, Luster became somewhat argumentative when the witnesses' answers challenged his version of the facts.  Consequently, the court finds that the testimony of Luster is less than credible regarding the events on July 7, 2009.  In short, after careful consideration of Luster's demeanor and the other *Gallegos* factors set out above, the court concludes that Luster's testimony regarding his encounter with correctional officers is not worthy of belief.  Finally, the court finds that the defendants and their witnesses, even considering their obvious interest in a favorable outcome, to be credible based upon the court's observation of the officers and their demeanor during their testimony.  Next, this court must determine whether the officers'

use of force was justified under the circumstances.

### B.  The Excessive Force Claim

Luster claims Officers Terry and Barber maliciously and sadistically used excessive force against him.  Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id*. (internal quotations omitted).  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Id*. However, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."  *Id*. at 4.  "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. ____, 130 S.Ct.1175, 1178-1179 (2010).

The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. *Wilkins,* 130 S.Ct.  at 1179.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley v. Albers,* 475

U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033). Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance.... *Harris v. Chanclor*, 537 F.2d 203, 206 (5th Cir. 1976) ("a supervisory officer is liable under [Section] 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence").

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002) (footnote omitted); *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) ("To establish an Eighth Amendment claim for excessive force, ... Plaintiff must meet [a heightened] intent requirement ... [and] must prove that 'force was applied ... maliciously and sadistically for the very purpose of causing harm.' *Whitley,* 475 U.S. at 320-21, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)) .... [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary.").

Another relevant factor in ascertaining whether correctional officers used force "maliciously and sadistically" is the extent of the injury suffered by the inmate. *Campbell*, 169 F.3d at 1375. Whether there is an Eighth Amendment violation in the context of a prison

disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 130 S.Ct. 1175. While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. *Id.* at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." *See Hudson,* 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. *Wilkins,* 130 S.Ct. at 1178. A *de minimis* use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*

First, the court must determine whether there was a need for the application of force. Based on the evidence presented, the court finds that Officers Barber and Terry used force in an effort to maintain discipline during a search of the dormitory. Officer Terry used verbal commands and grabbed Luster and ordered him to lie on the ground in an effort to get him off the bed during the search. Officer Barber placed Luster against the wall and Officer Terry pushed Luster away when he turned around and began reaching for his belongings. Thus, the defendants were justified in using force to protect the officers and other inmates during a CERT-team search of the entire dormitory.

The next question concerns the relationship between the need and the amount of force

-6-

that was used.  The photographs presented by Luster indicate that, at some point on the day of the incident, he had swelling on his face and some bruising on his ribs.  In addition, the body chart reflects that medical personnel observed and documented Plaintiff's reports of pain and/or injury to his face, back, and ribs. There are no broken bones or other serious injuries.  Nonetheless, as explained, the *de minimis* nature of an inmate's injuries is not dispositive of an excessive force claim.  *Wilkins*, 130 S.Ct. at 1177 (Dismissal of "a prisoner's excessive force claim based entirely on ... [a] determination that his injuries were '*de minimis*' [is improper] ... [as it] is at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury....").  The nature of the injuries suffered by Luster, however, remain relevant to whether Defendants Terry and Barber actually used force as described by Luster and whether they acted "'maliciously and sadistically'...." *Id.* at 1180.  When Luster hesitated to get out of bed and began kicking his legs, Officer Terry grabbed Luster's pants and collar and pulled him off the bed in an effort to maintain order and discipline during the search.  When Luster reached for his belongings after being ordered not to do so, it is clear that the officers reasonably perceived that Luster posed a threat to them.  The evidence shows that the force was reasonably related to its need and not applied for any longer than necessary.  The court therefore concludes that judgment should be entered in favor of the defendants with respect to Luster's excessive force claim.

### C.      The Failure to Protect

Luster claims that Officer Griffin acted with deliberate indifference to his safety because he failed to stop Officers Barber and Terry from attacking him during the search of the dormitory.

Prison officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only when a plaintiff establishes the existence of  "a substantial risk of serious harm, of which the official is subjectively aware,  . . . and [that] the official does not respond[] reasonably to the risk'...."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(*en banc*), *quoting Farmer*, 511 U.S. at 844.  Thus, in order to survive summary judgment on this claim, Plaintiff  is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

-8-

The court finds that the officers' use of force was not excessive.  Thus, the court cannot conclude that Luster was subjected to a substantial risk of serious harm.  Nonetheless, even assuming the existence of a serious risk of harm, the court finds that Officer Griffin was not subjectively aware of such a risk.  The court accepts Officer Griffin's testimony that he did not see the officers beat Luster.  Consequently, judgment should be entered in favor of Officer Griffin on the plaintiff's claim that Luster acted with deliberate indifference to his safety by failing to protect him from an assault by Defendants Terry and Barber.

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that judgment be entered in favor of the defendants and that this case be dismissed with prejudice.

It is further

ORDERED that on or before **November 1, 2012** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

      Done this 17th day of October, 2012.


           /s/Terry F. Moorer
           TERRY F. MOORER
           UNITED STATES MAGISTRATE JUDGE